954 F.2d 1437
 Annie M. BOLTON, Plaintiff-Appellant,
v.
CONSTRUCTION LABORERS' PENSION TRUST FOR SOUTHERN
CALIFORNIA; Louie Bravo; Donna Davidson; Roger
Jaska; Robert Kruse; Armando Lopez;
William Middleton, Defendants-Appellees.
 No. 90-55654.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1991.
Decided Aug. 30, 1991.
As Amended on Denial of Rehearing and Rehearing En Banc Jan.
24, 1992.
 
 Ronald Dean, Pacific Palisades, Cal., for plaintiff-appellant.
 John S. Miller, Jr., Cox, Castle & Nicholson, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, CANBY and BOOCHEVER, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Annie Bolton (Bolton), widow of plan participant Levi Bolton, appeals from a summary judgment in favor of Construction Laborers' Pension Trust of Southern California (Plan). The Plan denied benefits to Bolton because Levi's pension rights had not fully vested at the time he suffered a break in service. Bolton contends that application of the break-in-service rule in this case is arbitrary because Levi's break was involuntary and he later returned to covered employment, working enough additional years to satisfy the vesting requirements. In addition, Bolton contends that the Plan should be estopped from asserting that Levi's break was not involuntary because it consistently represented to Levi that he was fully vested, thus deterring him from marshalling evidence to prove the nature of his break.
 
 
 2
 The district court affirmed the denial of benefits, holding that where the break in service occurred before the Plan participant had worked the required years to be fully vested, the voluntariness of the break is irrelevant. As a result of this ruling, the district court found it unnecessary to consider the estoppel argument "to establish the fact of involuntariness."
 
 
 3
 We reverse and remand for further proceedings consistent with this opinion.
 
 FACTS
 
 4
 The Plan under which Bolton served required fifteen years of credited service in order for pension rights to vest. The Plan's break-in-service rule provided that if a non-vested participant failed to accumulate at least 300 hours of service in each of two consecutive years, all of that participant's prior credits would be cancelled.
 
 
 5
 Levi Bolton worked as a laborer in Plan-covered employment from 1959 through 1973, acquiring 14 1/12 years of credited service. In both 1974 and 1975 Levi failed to accumulate 300 hours of credited service.[1] Annie Bolton contends that Levi was unable to accumulate the hours necessary to avoid the break-in-service rule during those two years, even though he made every reasonable effort to find qualified work, because no work was available.
 
 
 6
 From January 1975 through 1979, Levi worked for the City of Los Angeles in non-covered employment. In 1979, Levi returned to covered employment and earned an additional 5 4/12ths years of credited service. The sum of Levi's two terms of covered employment is clearly more than the minimum of fifteen years required for vesting under the Plan.
 
 
 7
 In 1979, 1984, and 1985, the Plan confirmed in writing that Levi was vested in a pension benefit under "Regular Plan One" and would be entitled to benefits upon reaching age 65.[2] In 1987, following her husband's death, Annie Bolton applied to the Plan for survivor benefits, to which she would have been entitled if Levi had vested rights for a pension. In June of that year, the pension committee determined that Levi was not vested because his pre-1975 credits were cancelled as of the last day of 1975 due to a break in service.
 
 BREAK-IN-SERVICE RULE
 
 8
 The sole issue before us is whether the break-in-service rule is invalid for Plan participants who incurred a break due to involuntary unemployment and who later worked in sufficient covered employment to qualify for a pension if the pre-break employment were considered. The Plan's position is that Lee v. Nesbitt, 453 F.2d 1309 (9th Cir.1972), and Tafoya v. Western Conference of Teamsters, 909 F.2d 344 (9th Cir.1990), require us to hold the application of the break-in-service rule proper in this case. We find neither Lee nor Tafoya controlling, and hold that the Plan acted arbitrarily in applying the break-in-service rule to cancel Levi's credits without considering whether his break in service was due to involuntary unemployment.[3]
 
 
 9
 In Lee, we dealt with the case of a plan participant who was initially denied benefits because he had not reached retirement age, even though he had worked the required fifteen years before suffering an involuntary break in service. Lee challenged the plan's break-in-service rule as unreasonable in its terms and arbitrary in its application. We held the break-in-service rule "invalid to the extent that it requires forfeiture of employment credits in the case of an employee who has accumulated the minimum number of credits to entitle him to a pension and then, due to unavailability of covered employment, suffers a break in employment during the interval remaining before his retirement."[4] Id. at 1312. The Plan, in the present case, relies on this language to argue that the only time the break-in-service rule is invalid is when it is applied to deny benefits to an employee who has worked the required number of years before suffering an involuntary break in service. The Plan exaggerates the holding of Lee.
 
 
 10
 We recognized in Lee that when "an employee, through no fault of his own, is prevented from completing a minimum period of employment, he may be denied a pension." Id. at 1311. But Lee left open the issue of whether a participant who has completed the minimum period of employment, even though that employment was interrupted by an involuntary break, is entitled to benefits.[5] The reasoning in Lee, however, supports our decision that the Plan must determine that Bolton's break was voluntary before denying benefits. We stated in Lee that, because the trust from which benefits are paid is "solely funded by employers' contributions, the amounts of which are determined by the number of days an employee works in covered employment," benefits may reasonably be denied when the employee fails to work the minimum required years. Id. Bolton worked well over the minimum fifteen years required; funds were contributed as a result of his efforts. While benefits are never directly reflective of contributions, the award of benefits to Bolton does not distort the functioning of the Plan. Denial of benefits, on the other hand, seems almost as grossly unfair as it was in Lee.
 
 
 11
 We also stated in Lee that the break-in-service rule is "calculated to induce competent employees to remain in the industry." Id. at 1312. If an employee is forced to leave covered employment due to an unavailability of jobs, that employee would not be induced to remain in the industry if, upon his or her return to work in covered employment, credits for all years prior to the involuntary break were cancelled. Operation of the rule in such a case would offer no incentive for competent laborers to stay in the industry; application of the rule would be arbitrary. The reasoning articulated in Lee, rather than supporting the Plan's argument, militates against it.
 
 
 12
 We also do not find Tafoya helpful to the Plan. Although we did hold in Tafoya that the fund's failure to consider the involuntariness of Tafoya's break in service was not arbitrary, we relied on the fact that Tafoya "never worked the number of years required by the plan in effect at the time he was employed." Tafoya, 909 F.2d 344, 349. On this fact alone, we distinguished two district court decisions. In both Shishido v. SIU-Pacific District-PMA Pension Plan, 587 F.Supp. 112, 119 (N.D.Cal.1983), and Walker v. Construction Laborers Pension Trust Fund, 6 E.B.C. 1412, 101 Lab.Cas. (CCH) p 11,172, 1984 WL 3156 (C.D.Cal.1984), the employee's total time before and after an involuntary break satisfied the vesting requirements in effect at the time of employment. We cited with approval the district courts' decisions holding the break-in-service rule invalid as applied in those cases. Tafoya, 909 F.2d at 349. We follow Shishido and Walker, consistently with Tafoya, in holding that, because Levi Bolton worked the minimum number of years required by the Plan, Annie Bolton can avoid the forfeiture of his pension under the break-in-service rule if she can prove his break was involuntary.[6]
 
 
 13
 This holding requires that we remand to the district court for a determination whether Levi Bolton's break in service was involuntary.
 
 ESTOPPEL
 
 14
 Annie Bolton argues that had the Plan not advised Levi during his lifetime that he was fully vested, Levi would have been able to provide ample evidence that the break was involuntary. Bolton contends that, because it was not until after Levi's death that the Plan advised Levi's widow that she was not entitled to benefits, the Plan should be estopped from arguing that Levi's break was not involuntary.
 
 
 15
 As we read the record, this argument was not considered by the district judge. The trial judge determined that Bolton's estoppel argument would have made no difference because the break-in-service rule defeated the claim whether the break was voluntary or involuntary. Because we hold that Levi's break cannot bar the claim if it was involuntary, the estoppel question becomes material. We leave it to the district court, on remand, to address that issue in the first instance, in light of Thurber v. Western Conf. of Teamsters Pension Plan, 542 F.2d 1106 (9th Cir.1976), and Cann v. Carpenters Pension Trust for Southern Cal., 662 F.Supp. 501 (C.D.Cal.1987).
 
 
 16
 The summary judgment is reversed and the matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 [1]
 Although any two consecutive-year break in covered employment effectively cancelled prior earned credits, only 1974 and 1975 are relevant to our analysis of Levi's break in service. The ERISA plan, which took effect in 1976, provided that credits that had been cancelled under the pre-ERISA plan would remain cancelled. Thus, if the Plan's break-in-service rule is enforced as written, Levi had no credits at the beginning of 1976, when ERISA took effect. Levi would then be unable to benefit from ERISA's provision that pension rights of a covered employee vest after only ten years of covered employment
 
 
 [2]
 Regular Plan One did not become effective, however, until January 1, 1976. The pension plan in effect prior to 1976 is the one that governs Levi
 
 
 [3]
 We review de novo the question of arbitrary and capricious conduct and structural defect when the underlying facts are not in dispute. Phillips v. Alaska Hotel and Restaurant Employees Pension Fund, 944 F.2d 509, 515 (9th Cir.1991), amended, slip op. 15549 (9th Cir. Dec. 6, 1991)
 
 
 [4]
 This holding required us to reverse and remand for the district court to make the factual determination whether covered employment was unavailable, rendering Lee's break in service involuntary
 
 
 [5]
 Although this issue was left open in Lee because the issue was not before the court, we noted in footnote 3 that "agreements generally differentiate between voluntary and involuntary breaks in employment insofar as the effects on accumulated credits for prior services are concerned. When the break is due to lack of jobs, credits are preserved; but they are lost when the employee quits." Lee, 453 F.2d at 1312 n. 3
 
 
 [6]
 The district court erroneously based its contrary holding on Siles v. ILGWU Nat'l Retirement Fund, 783 F.2d 923 (9th Cir.1986), and Wilson v. Board of Trustees, 564 F.2d 1299 (9th Cir.1977). In Siles, a case addressing the validity of transitional provisions under ERISA, we held that in the case of a claimant who never acquired the minimum years of service necessary to qualify under the plan, the break-in-service rule was properly applied without consideration of the voluntariness of the break
 In Wilson, the claimant, like the claimant in Lee, had worked the minimum number of years, but had not reached the required age, to vest. Wilson challenged the use of the break-in-service rule to deny his benefits, claiming his break was involuntary. Rather than holding that Wilson was not entitled to prove the involuntariness of his break, we reviewed the facts and held that "[w]e cannot agree that Wilson's break in employment was 'involuntary.' " Wilson, 564 F.2d at 1301.